NO. 12-57026
Consolidated with NOS. 12-57205, 12-57211

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MICHAEL SHAMES and GARY GRAMKOW,
*on behalf of themselves and all persons similarly situated,*
*Plaintiffs-Appellees,*

v.

GORDON HANSMEIER,
*Objector-Appellant,*

v.

HERTZ CORPORATION; DOLLAR THRIFTY AUTOMOTIVE GROUP,
INC.; AVIS BUDGET GROUP, INC.; VANGUARD CAR RENTAL USA
INC.; ENTERPRISE RENT-A-CAR COMPANY; FOX RENT A CAR,
INC.; COAST LEASING CORP.; THE CALIFORNIA TRAVEL AND
TOURISM COMMISSION,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of California, No. 3:07-cv-02174-MMA-WMC

**Opening Brief
of Appellant Gordon Hansmeier**

Paul R. Hansmeier
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South Seventh Street, Suite 212-313
Minneapolis, MN 55402
612-234-5744
*Attorney for Objector–Appellant Gordon Hansmeier*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

Statement of Subject Matter and Appellate Jurisdiction.................... 1

Statement of the Issues ................................................................. 2

Statutes and Rules...................................................................... 3

Statement of the Case ................................................................. 4

Statement of the Facts ................................................................ 5

    A.    The Lawsuit and Settlement Agreement ........................... 5

    B.    Gordon Hansmeier's Objections and the Fairness Hearing.......... 7

Summary of the Argument............................................................ 9

Argument................................................................................... 11

I.    The District Court Abused Its Discretion by Failing to Evaluate the Settlement and Attorneys' Fees as a Package Deal That Pays Class Counsel More Than Their Clients ................. 11

    A.    A District Court Must Protect Class Members' Interests............. 13

    B.    This Settlement Has All Three Signs of *Bluetooth* Self-Dealing .................. 15

    C.    The District Court Failed to Properly Evaluate the Settlement as a Package Deal........................................ 20

II.    The District Court Abused Its Discretion By Failing to Cross-Check Its Award of Attorneys' Fees for Reasonableness.................... 23

    A.    Fee Awards Based on the Lodestar Method Are Not Shielded From a Cross-Check for Reasonableness, Even Under a Fee-Shifting Statute ................. 24

    B.    The District Court Failed to Cross-Check an Unreasonable Fee Award ............................................... 28

CONCLUSION ........................................................................ 32

CERTIFICATE OF COMPLIANCE ............................................ 34

PROOF OF SERVICE................................................................ 35

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Casey v. Albertson's Inc.*, 362 F.3d 1254 (9th Cir. 2004) .................................................. 2, 20

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566 (9th Cir. 2004) .............................. 13

*City of Burlington v. Dague*, 505 U.S. 557 (1992) ..................................................... 29

*Cunningham v. Cnty. Of Los Angeles*, 879 F.2d 481 (9th Cir. 1988)..................................... 23

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)...................................................... 17

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ................................................................... 1

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ....................................................................... 27

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012).................................. 26

*Glasser v. Volkswagen of Am.*, 645 F.3d 1084 (9th Cir. 2011) ............................................ 1

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 14, 15

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................... 24

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .....................passim

*In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501
    (W.D. Wash. June 15, 2012) ................................................................. 28

*In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d
    768 (3d Cir. 1995) ....................................................................passim

*In re Petroleum Prods. Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997)............................25, 30

*In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998).............................. 26

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241 (8th Cir. 1996) ................... 14, 16, 20, 31

*McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009)................................................ 24

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) .................................... 14, 27

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................. 2, 13

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................. 2

*Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079 (9th Cir. 2010) .......................... 4

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................... 13, 14, 15, 27

*Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646 (7th Cir. 2006) ........................ 16, 30

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................... 16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................... 20

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ................. 15, 18

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323 (9th Cir. 1999) ................................. 31

## Other Authorities

American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05
(2010) ........................................................................................................ 15

Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809
(2000) ........................................................................................................ 20

John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of
Economic Theory For Private Enforcement of Law Through Class and
Derivitave Actions*, 86 Colum. L. Rev. 669 (1986) ..................................... 24, 27

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108
F.R.D. 237 (1985) ...................................................................................... 17

## Rules

Fed. R. Civ. Proc. 23 ............................................................................................... 3

## Statement of Subject Matter and Appellate Jurisdiction

The district court had federal question jurisdiction under 28 U.S.C. § 1331, because the plaintiffs' complaint alleged violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–2, and Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26.

The court's final judgment issued on November 5, 2012. ER 1–41.[1] Objector Gordon Hansmeier, one of several appellants in this case, filed a notice of appeal on November 6, 2012. ER 46. This notice was timely under Fed. R. App. P. 4(a)(1)(A).

This court has appellate jurisdiction because this is a timely-filed appeal from a final judgment under 28 U.S.C. § 1291. Hansmeier, as a class member and objector, has standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti*, 536 U.S. 1 (2002). Hansmeier has standing to challenge the fee award in a class action settlement with a separate fee arrangement by also challenging the settlement under a constructive common fund theory. *Glasser v. Volkswagen of Am.*, 645 F.3d 1084 (9th Cir. 2011).

---

[1] "ER" refers to Hansmeier's Excerpts of Record. "Dkt." refers to the docket in this case.

## Statement of the Issues

1.     Did the district court abuse its discretion when it approved a class action settlement under Rule 23(e) without evaluating the class recovery and the agreement on attorneys' fees as a "package deal?" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948–49 (9th Cir. 2011).

**Standard of Review:**  A district court decision to approve a class action settlement is reviewed for abuse of discretion. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). A failure to apply the correct law is an abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

2.     Did the district court abuse its discretion when it awarded class counsel attorneys' fees under Rule 23(h) based on a lodestar calculation without making a cross-check for reasonableness against class recovery as a constructive common fund?

**Standard of Review:**  A district court's award of attorney fees is reviewed for abuse of discretion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). A district court must specify its reasons for approving a particular attorneys' fee award, so that the appellate court may conduct meaningful review. *Powers*, 229 F.3d at 1256. A failure to apply the correct law is an abuse of discretion. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

## Statutes and Rules

**Federal Rule of Civil Procedure 23. Class Actions.**

**(a)    Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if

. . .

(4) the representative parties will fairly and adequately protect the interests of the class.

. . .

**(e)    Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

. . .

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

. . .

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

**(h)    Attorney's Fees and Nontaxable Costs.** In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a). . . .

## Statement of the Case

The case before the Court is a class action, based in antitrust and unfair competition law. Dkt. No. 85. Plaintiffs' first amended complaint alleged that a consortium of rental car companies proposed changes to California law, under which they would pay a high assessment fee to the California Travel and Tourism Commission, but would also be allowed to unbundle and separately itemize fees, and pass on some or all of these fees to consumers. *Id.* Plaintiffs alleged that this led to the imposition of two specific fees on consumers, a 2.5% tourism assessment fee and a 9% airport concession fee. *Id.* Plaintiffs alleged that this constituted price-fixing in violation of the Sherman Act, and that the Commission violated the Bagley-Keene Open Meeting Act in a number of ways. *Id.* Plaintiffs alleged that as a result, they and a class of similarly-situated persons paid a higher total price for rental cars at California airports than they otherwise would have. *Id.*

All Defendants filed motions to dismiss the first amended complaint (Dkt. Nos. 93–98); the district court granted the Commission's motion (Dkt. No. 107), and entered judgment in its favor on September 24, 2008. Dkt. No. 128. Plaintiffs appealed the Commission's dismissal, and on January 18, 2011 the Ninth Circuit reversed. *Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079 (9th Cir. 2010).

The parties reached a class settlement on May 17, 2012. ER 442–483. The district court issued an order preliminarily approving the settlement on May 21, 2012,

which it amended and reissued on May 22. ER 337–424. Class member Gordon

Hansmeier, *inter alia*, objected. ER187–217; ER 119–28. The district court held a

fairness hearing on October 29, 2012. ER 47–118. Ultimately, on November 5, 2012,

the district court approved the settlement, granted class counsel's request for $5.87

million in attorneys' fees and costs, and entered judgment. ER 1–41. Hansmeier filed

his notice of appeal on November 6, 2012. ER 46. Other objectors subsequently filed

notices of appeal (ER 42–45), and this Court consolidated those appeals with

Hansmeier's appeal on January 25, 2013. Dkt. No. 380.


## Statement of the Facts

### A.    The Lawsuit and Settlement Agreement

The underlying case is a class action, based in antitrust and unfair competition

law. Dkt. No. 85. Plaintiffs' first amended complaint alleged that a consortium of

rental car companies and the California Travel and Tourism Commission colluded to

pass two specific fees on consumers, a 2.5% tourism assessment fee and a 9% airport

concession fee. *Id.* Plaintiffs alleged that this constituted price-fixing in violation of

the Sherman Act, and that the Commission violated the Bagley-Keene Open Meeting

Act in a number of ways. *Id.* Plaintiffs alleged economic injury: paying a higher total

price for rental cars at California airports than they otherwise would have. *Id.* The

complaint sought treble damages, injunctive relief, restitution and disgorgement, the costs of suit, and an award of attorneys' fees under fee-shifting statutes. *Id.*

Under the settlement reached on May 17, 2012 (ER 449–83), the class was defined as "all Persons … who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line item on their invoices," excluding rentals made pursuant to a pre-existing agreement with a business or governmental entity, as well as rentals made through a third-party tour operator or online booking agency. ER 454–55. The settlement class was thus not only nationwide, but worldwide in effect. Although the parties could only roughly estimate how many discrete individuals were in the class due to potential overlap between different car rental defendants (ER 66–68), the computerized transaction records kept by the rental car defendants showed 3,447,933 unique rental transactions. ER 252; *see also* ER 67.

Although the parties and the settlement administrator had contact information for the majority of the class (ER 149–77; ER 251–83), class members could only recover by making a claim through submission of an "election of benefits form." ER 484–503; *see also* ER 160–61. If class members made a claim, they could choose between two options: (1) receiving a cash payment equal to $2 per car rental day during the class period, with a minimum payment of $5; or (2) a coupon for free

6

rental car time and mileage for one day at a U.S., corporate-owned location of the rental car defendants, with those members who rented for more than eight days receiving two such coupons. ER 461–62. The coupons were subject to significant restrictions: only originals would be honored, they were non-transferable except to persons co-habiting with the claimant, they would not be replaced if lost or stolen, and they would expire within eighteen months. ER 462–63; ER 504–525. The coupons did not include "any otherwise applicable one-way or drop charges, taxes, fees, charges, insurance and any optional products (such as loss damage waiver and refueling) related to the rental." ER 462. In addition, the Commission agreed to fully comply with the Bagley-Keene Open Meeting Act, and to issue statements that it "takes no position on whether any tourism assessment fee should be charged to rental car customers" and that any such fee charge "must be individually determined by each passenger car rental company." ER 464–65.

The settlement permitted class counsel to ask for up to $5.87 million in fees and expenses, with Defendants agreeing not to challenge that amount. ER 469–70. Class counsel asked for the entire amount, claiming that it was only 80% of their combined lodestar. ER 315–16.

## B.    Gordon Hansmeier's Objections and the Fairness Hearing

Hansmeier, a resident of Minnesota, traveled to San Diego several times and made multiple car rentals during the class period. ER 194–95. Under the settlement, he was eligible for either a cash payment of $10 or one car rental coupon. *Id.*

Hansmeier objected that the settlement displayed all of the warning signs of a substantively self-dealing settlement identified by the Ninth Circuit in *Bluetooth*, that it merited higher scrutiny due to the use of coupons and that such coupons were overvalued, that the district court could not accurately evaluate the value of the claims or the class relief under the evidence submitted, and that the settlement was structured so that class members were unlikely to be compensated even though the settling parties had information sufficient to ensure that absent class members would receive relief. ER 187–217. Hansmeier objected that the settlement was fee-driven, with the compensation to class counsel likely to exceed the actual value provided to the absent class members and class counsel likely to take a disproportionate share of the overall settlement package. ER 209–12. Hansmeier further argued that the attorneys' fees requested were excessive and should be reduced, by cross-checking against class recovery. ER 212–17.

Hansmeier's prediction regarding low class recovery was vindicated as conservative. Shortly before the fairness hearing, it was revealed that class counsel's own estimate showed that the class would receive relief valued at only $4,835,632—an amount smaller than class counsel's requested award of attorneys' fees—and that claimants had overwhelmingly chosen to receive cash instead of coupons supposedly worth many times more. ER 119–21. Class counsel revised its estimate of class relief slightly upward at the fairness hearing to reflect additional claims received, but represented that the court should not wait for the claims period to end to rule on the

settlement. ER 69–71. The settling parties made no effort to update the record with the final total number of valid claims thereafter. Ultimately, the district court approved the settlement, finding the settlement to be fair, reasonable, and adequate, and awarded the full amount of requested attorneys' fees and costs under a lodestar method without a cross-check, emphasizing the underlying fee-shifting statutes. ER 1–41.

## Summary of the Argument

This Court has recognized that a settlement must be structured for the benefit of the class—not the benefit of the attorneys. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). The district court erred by ignoring that principle. The settlement approval must therefore be reversed.

*First*, the district court failed to evaluate the settlement as a "package deal," inclusive of both class recovery and attorneys' fees as a constructive common fund. Because the settlement shows all of the *Bluetooth* factors suggestive of a substantively self-dealing settlement, the district court had an obligation to determine whether the settlement distribution was disproportionately biased towards the class attorneys. Instead, the district court approved a settlement which will actually distribute more value in attorneys' fees than it will in class recovery.

*Second*, the district court failed to cross-check the lodestar-based attorneys' fee award for reasonableness against the overall constructive common fund. While the district court used the underlying statutory fee shifting provisions in this case as a justification for avoiding a cross-check for reasonableness, in doing so the court ignored Ninth Circuit precedent obligating it to cross-check this disproportionate lodestar award. In the context of the class action mechanism, which itself ensures that an adequate fee can be proportional to aggregate class recovery, and which also introduces conflicting interests between attorneys and their clients, the district court had an obligation to cross-check lodestar against class recovery to make sure that the fee award was reasonable. Instead, the district court approved a windfall attorneys' fee award which exceeds the aggregate class recovery.

Hansmeier also believes that the district court erred in failing to recognize the car rental vouchers as coupons under the Class Action Fairness Act, but understands that other appellants plan to argue this point. Hansmeier joins any and all valid arguments presented by other appellants.

## Argument

### I.  The District Court Abused Its Discretion by Failing to Evaluate the Settlement and Attorneys' Fees as a Package Deal That Pays Class Counsel More Than Their Clients

The settlement before this Court is a claims-made settlement. In claims-made settlements, defendants' liability is theoretically uncapped, but in reality is limited to the number of claims class members submit during a claims period. Frequently, as in this case (ER 23), the parties schedule the claims deadline after the fairness hearing, so that the Court must make its decision before all the facts are in on class recovery. Here, the fairness hearing was held on October 29, 2012 (ER 47), but the claims period continued until January 25, 2013. ER 23. Nevertheless, the district court found that "[t]here is no need to wait until all class members have filed claims to award attorneys' fees" or to evaluate the settlement.[2] ER 16.

Because of the risks of the underlying case, and the supposed sufficiency of the offered relief in relation to the damages suffered,[3] the district court found that the

---

[2] The district court did consider whether to postpone its final evaluation of the settlement until January 2013, "to see what the actual figures are, the actual payout and then we can calculate the actual value of the settlement and then talk about fairness and talk about attorneys fees." ER 56, 70. However, class counsel argued at the fairness hearing that waiting until the claims period had ended was not necessary, so as to speed the appellate review process. ER 71. Thus, class counsel has apparently conceded that the settlement can be reviewed by this Court based on the recovery figures they made available to the district court at the time of the fairness hearing.

[3] The district court never had access to any evidence submitted by Plaintiffs on the matter of estimated individual damages. Class counsel referenced general information

amount the class received was satisfactory. ER 8–11. But while this is *necessary* to approve a settlement, it is not *sufficient*. Under the holistic evaluation mandated by this Court's precedents, a settlement is unfair "when counsel receive a disproportionate distribution of the settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Here, all signs showed that the class received a disproportionately small share of this settlement, yet the district court failed to sufficiently evaluate whether the distribution of the settlement was fair or reasonable. This is reversible error.

Hansmeier is not arguing that the parties explicitly colluded to eliminate legitimate class claims, nor that the parties did not settle the case for "enough." Hansmeier simply maintains that courts must abide by the Ninth Circuit's mandate that the distribution of settlement proceeds must be fair and reasonable. The settling parties arrived at this settlement as an overall package, and were fully capable of estimating the total value; the district court should likewise have evaluated the fairness of the settlement holistically, by comparing the class distribution to the overall constructive common fund.

---

from an expert report, but did not disclose details of that report, or the report itself. ER 10. At the fairness hearing, the district court noted the absence of "any declaration or anything from [Plaintiff's expert]," and stated "I think I would like to have some comfort," but ultimately no evidence was provided. ER 59, 61. In addition, the district court did not account for the trebling of damages that had initially been requested by Plaintiffs, pursuant to the antitrust laws sued under. *See generally* ER 1–36.

### A.    A District Court Must Protect Class Members' Interests

This Circuit's precedents call upon courts to consider an eight-factor test to evaluate the fairness of a settlement: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). However, this Court has never held that the *Churchill Village* factors are the exclusive means of evaluating a settlement. *See, e.g.*, *Bluetooth*, 654 F.3d at 946–47; *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) (reversing settlement approval for unfairness for reasons outside of *Churchill Village* test).

Other factors affect whether a settlement is objectively fair. This Court has held that district courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (*citing Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003)). Other circuits agree that courts must guard against self-dealing by class counsel. "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest

fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.). These concerns are at their zenith "when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement …"*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord Bluetooth*, 654 F.3d at 947. "

This Court has instructed district courts to view settlements holistically—inclusive of both class relief and attorneys' fees—in order to better gauge their objective fairness to class members. "Even when technically funded separately, the class recovery and the agreement on attorneys' fees should be viewed as a 'package deal.'" *Bluetooth*, 654 F.3d at 948–49 (*quoting Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 245–46 (8th Cir. 1996)). Fees must be taken into account because the otherwise adversarial relationship between class counsel and defendants necessarily breaks down when it comes to distributing settlement payments between the class and their attorneys. "[A] defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (*quoting In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819–20 (3d Cir. 1995)); *see also Bluetooth*, 654 F.3d at 949; *Mirfasihi*, 356 F.3d at 785. Thus, defendants have no reason to contest a self-dealing distribution to class attorneys, and are likely to acquiesce to such a distribution if it helps them reach settlement. If fees constitute too large a portion of the package deal, "the likelihood is that the defendant obtained an

economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief than could otherwise have obtained." *Staton*, 327 F.3d at 964; *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991).

## B.    This Settlement Has All Three Signs of *Bluetooth* Self-Dealing

In order to properly judge the fairness of a settlement, courts must look beyond the prospect of express or explicit collusion in order "to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948. A court must ask whether the attorneys are unfairly attuned to their own self-interest at the expense of the class. *See id.* at 947–48; *cf.* American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05, *comment b* at 208 (2010) ("a proposed settlement in which the class receives an insubstantial payment while the fees requested by counsel are substantial could raise fairness concerns").

In *Bluetooth*, this Court provided a nonexclusive list of three possible signs of self-dealing. 654 F.3d at 947. All three of these "multiple indicia" of unfairness are present here.

*First*, "counsel receive[d] a disproportionate distribution of the settlement." *Id.* (*quoting Hanlon*, 150 F.3d at 1021). This is true even by class counsel's own figures and estimates. At the time of the fairness hearing before the district court, class counsel stated that the total number of claims received at that point was 173,578. ER 68. Of those claims, 110,537 were claims for cash payments, totaling $1,835,661. ER 69. And

62,794 were claims for car rental vouchers, which even based upon class counsel's estimated $40 value were worth only $3,087,800. *Id.* Thus, at the time of the fairness hearing, the class was slated to receive only $4,923,461.[4] As the district court correctly observed during the fairness hearing below, the total value of class claims was "of course, less than the amount of the attorneys fees and costs being claimed here today." ER 56.

Class counsel successfully asked for fees of $5,123,336 and reimbursement of $746,664 in costs, totaling $5.87 million. ER 27–33. Thus, the fee award alone exceeded the expected class recovery at the time of the fairness hearing by approximately $200,000. As a practical matter, by asking for more than what their clients received, class counsel took the lion's share of the constructive common fund for itself. *In re GMC*, 55 F.3d at 820 (severable fee structure "is, for practical purposes, a constructive common fund"); *Johnston*, 83 F.3d at 241 ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). Even including settlement

---

[4] Using class counsel's own $40 estimate for the value of the car rental vouchers sets a low bar for settlement fairness. Hansmeier disputes class counsel's $40 estimate of the value of the car rental vouchers, because it is inflated in a number of ways. ER 126–27, 129–35. That estimate is based upon anomalously-high rates, ignores less-expensive markets like San Diego, and uses higher weekday rates when this class of leisure renters is more likely to rent during the lower-priced weekends. ER 129–35. The estimate is based upon face value rates even though "compensation in kind is worth less than cash of the same nominal value." *Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). And, "[w]here a coupon or rebate is not freely transferable on the open market, as is the case here, it has even less value." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010).

administration costs, which were estimated to total $1,727,200 at most (ER 164–65), the total value of the settlement was expected to be approximately $12.5 million. Class counsel would take 40% of that constructive common fund in attorneys' fees and another 6% in costs—a disproportionate distribution. This Court recently stated that an attorneys' fee award amounting to 38.9% of the "true value of the constructive common fund" would be "clearly excessive under our guidelines." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). And the fee award critiqued by this Court in *Bluetooth*—which was, like this case, based on statutory fee-shifting claims—was 37.2% of the overall settlement, inclusive of administration costs. *Bluetooth*, 654 F.3d at 945.

The fact that fees may not be negotiated until after the rest of the settlement, or that a neutral mediator is used, makes no economic difference—because this is not a question of explicit collusion. The settling parties are rational actors who know in advance that fee negotiations are coming, and defendants can reasonably estimate what plaintiffs will claim their lodestar to be from their own defense costs. "Even if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations." Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 266 (1985); *cf. Bluetooth*, 654 F.3d at 948.

Similarly, the fact that the disproportionately low value of the class recovery springs from low participation in a claims-made settlement makes no difference. The

negotiating parties are capable of reasonably anticipating what the claims rate is likely to be, and as rational actors, defendants will use this to estimate their total costs. Here, the Defendants negotiated the total settlement package based on the expectation that the claims process would result in a claims rate of between 3% and 5%. ER 120–21; Dkt. No. 346 at 20. Courts must "take into account the defendant's overall willingness to pay," because "a defendant is interested only in disposing of the total claim against it." *Bluetooth*, 654 F.3d at 949. If defendants are fully capable of estimating their overall costs, inclusive of class recovery and attorneys' fees, and thus negotiate the settlement package as a constructive common fund, then courts should in turn ensure that the recovery is not disproportionately distributed. The claims-made nature of a settlement should not prevent scrutiny where the defendants negotiate the settlement terms as an overall package deal.

*Second*, the settlement has a "clear sailing" agreement, providing for the payment of attorneys' fees separate and apart from class funds without challenge from the defendants. *Bluetooth*, 654 F.3d at 948. A clear sailing clause stipulates that the attorneys' fee request will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process," and should therefore go "under the microscope of judicial scrutiny." *Weinberger*, 925 F.2d at 525. The clear sailing agreement lays the groundwork for self-interest to infect the settlement negotiations, allowing lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524;

*accord Bluetooth*, 654 F.3d at 947. This *quid pro quo* need not be overt for the existence of the clear sailing agreement to be an explicit sign of implicit self-dealing. Here, class counsel put its own fees ahead of the interests of the class by insulating those fees from challenge by the Defendants. ER 469–70.

*Third*, the "parties arrange[d] for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947. A "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. This danger follows from the disproportionate clear sailing provision, which combined with Defendants' expectation of a 3–5% claims rate (ER 120–21 (*citing* Dkt. No. 346 at 20)), shows that Defendants negotiated a holistic constructive common fund. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Bluetooth*, 654 F.3d at 949. Here, the settlement agreement does not provide that a reduction in the fee award by the district court would increase the recovery by the class; instead, any such reduction would be a savings for Defendants. ER 469–71.

Although the district court attempted to distinguish between a *reversion to* defendants and a *savings for* defendants (ER 21–22), whatever label is chosen, the same concerns are present. A class of plaintiffs is always worse off when class counsel negotiates a kicker arrangement, because the only reason to negotiate such a provision

is to insulate the fee request from scrutiny. *See* Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809, 1839 (2000) (kicker arrangement is "a strategic effort to insulate a fee award from attack"). Judges have little incentive to scrutinize a fee award, because aside from denying settlement approval, their decision "will have no impact one way or the other on the amount the class recovers," as the district court observed below. ER 22. And objectors have little financial incentive to contest a disproportionate fee award, since they are only entitled to fees if they provide a substantial benefit to the class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). Added together, the presence of these *Bluetooth* factors should have moved the district court to closely scrutinize the fee request in the context of the total constructive common fund.

## C.   The District Court Failed to Properly Evaluate the Settlement as a Package Deal

The district court erred because it failed to look at the settlement holistically. "Even when technically funded separately, the class recovery and the agreement on attorneys' fees should be viewed as a 'package deal.'" *Bluetooth*, 654 F.3d at 948–49 (*quoting Johnston*, 83 F.3d at 245–46). The district court applied a legally incorrect test, and that requires that the judgment be vacated and remanded. *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004) (failure to apply correct law is an abuse of discretion).

The district court's review of the *Bluetooth* factors was incomplete and incorrect. Rather than substantively examine the disproportion between class recovery and the fee request for implicitly self-dealing results, the district court satisfied itself largely by reference to the absence of explicit collusion. Discussing the possibility of collusion separately, the district court confined its review to the absence of signs of explicit collusion, including the presence of a neutral mediator and the protracted length of the litigation. ER 24–25. But this Court has stated that the absence of explicit collusion is not sufficient. *Bluetooth*, 654 F.3d at 948. When discussing the clear sailing agreement, the court relied on the separation of fee negotiations from relief negotiations and on the ostensibly satisfactory recovery available to individual class members in comparison to their estimated individual damages—but did not compare the recovery to the trebled damages claimed by the Plaintiff class. ER 21. Moreover, the district court dismissed the third *Bluetooth* factor as irrelevant because the kicker was the product of Defendants' agreement to pay fees separately from class relief (ER 21–22), when this is exactly the error of law and logic that *Bluetooth* criticized—the potential disproportionate distribution of a constructive common fund doesn't just affect the defendants, but suggests that the settlement terms may "betray the class's interests." *Id.* at 949.

Above all, the district court failed to substantively compare the class recovery to the fee request. The district court failed to make any express findings on the actual or estimated value of the class recovery. Instead, it made conclusory statements

without showing its math. "[T]he parties in this case have negotiated a settlement that provides direct payment to class members and the value of which dwarfs the negotiated fee amount." ER 20. "[T]he fee request here is not disproportionately *higher* than the benefits negotiated for the class—indeed it is much *lower*." ER 21 (emphasis in original). These statements directly contradict the court's own observation at the fairness hearing that the value of claims made was "of course, less than the amount of attorneys fees and costs being claimed here today." ER 56. They also contradict the data—namely, class counsel's statement at the hearing that the total value of claims to date was $1,835,661 in cash and $3,087,800 in vouchers. ER 69. As such, the district court's statements that the distribution to class members "dwarfs" the fee request constituted manifest error.

It appears that the district court declined to seriously consider the disproportion between the class recovery and the attorneys' fee request because of "the antitrust nature of this case," which "played a significant role in the Court's decision to use the lodestar method" to award fees. ER 31. The district court found that "comparison of the Court's fee award with the final value of redemptions is a patently unfair way to compensate class counsel in this case." ER 32. But the district court's failure to cross-check its fee award against the constructive common fund was just as much an error of law and logic as its failure to compare class recovery to fees.

## II.   The District Court Abused Its Discretion By Failing to Cross-Check Its Award of Attorneys' Fees for Reasonableness

The district court awarded fees based solely on a lodestar calculation. ER 27–33. "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes … where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." *Bluetooth*, 654 F.3d at 941. The district court cited the Third Circuit's explanation of the lodestar method in justifying its refusal to consider class recovery. ER 31–32. "Because the lodestar award is de-coupled from the class recovery, the lodestar assures counsel undertaking socially beneficial litigation . . . an adequate fee irrespective of the monetary value of the final relief achieved for the class." *In re GMC*, 55 F.3d at 821. This Court has instructed that a lodestar figure is "presumptively reasonable"—but that it should also be adjusted based on reasonableness. *Bluetooth*, 654 F.3d at 941–42 (*quoting Cunningham v. Cnty. Of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988)). Where the benefits of a class action settlement may be disproportionately distributed in favor of class counsel at the expense of their clients, this reasonableness inquiry should include a cross-check against the constructive common fund negotiated by the parties.

Here, however, the district court refused to cross-check the lodestar. ER 31–32, 33–34 n.18. The district court did so even despite noting that "observers may view this award as being unjustifiably large when compared to the ultimate value of cash and voucher redemptions." ER 31. By neglecting to cross-check the fee award for

reasonableness, the district court ended up awarding not merely an adequate fee, as required by fee-shifting statutes, but a windfall exceeding the value of the benefit provided to the class. The district court's refusal to cross-check the lodestar method, where the distribution was facially unfair, was reversible error.

## A.   Fee Awards Based on the Lodestar Method Are Not Shielded From a Cross-Check for Reasonableness, Even Under a Fee-Shifting Statute

This Court's precedents do not insulate lodestar fee awards from scrutiny based on the results achieved. To the contrary, this Court mandates that courts compare the lodestar figure to the class recovery to judge whether a fee award is reasonable. "Foremost among these considerations [of reasonableness of a fee award] . . . is the benefit obtained for the class." *Bluetooth*, 654 F.3d at 942 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)). And while courts may choose whether to employ the lodestar method or percentage-of-recovery method, "their discretion must be exercised so as to achieve a reasonable result." *Bluetooth*, 654 F.3d at 942.

Other circuits agree. In the same opinion cited by the district court, the Third Circuit admonished that "the court must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *In re GMC*, 55 F.3d at 821–22 (*citing* John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory For Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 691, 717 (1986)). Thus, even if the

plaintiffs wish an award based on their lodestar, a court must cross-check the request against the percentage of the fund. "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Bluetooth*, 654 F.3d at 945 (*quoting In re GMC*, 55 F.3d at 821 n.40).

Even in class actions based upon statutes with fee-shifting provisions, courts should check whether an award is reasonable in comparison to the class recovery. This Court's decision in *In re Petroleum Products Antitrust Litigation*, 109 F.3d 602 (9th Cir. 1997)[5], was, like this case, based upon Clayton Act antitrust claims which provide statutory attorneys' fees. Nevertheless, this Court instructed district courts to cross-check the lodestar method against the percentage-of-recovery method to ensure the reasonableness of the fee award. "It is reasonable for the district court to compare the lodestar fee … to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates. … If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *In re Petroleum Prods.*, 109 F.3d at 607 (9th Cir. 1997). The settlement at issue in *Bluetooth* was also based upon a fee-shifting statute. 654 F.3d at 944. Yet, this Court reiterated that

---

[5] This case is sometimes cited as *In re Coordinated Pretrial Proceedings. See Bluetooth*, 654 F.3d at 945 (citing *Petroleum Products*, 109 F.3d at 607).

district courts must "guard against an unreasonable result by cross-checking their calculations against a second method," and criticized a fee award that would have amounted to 37.2% of the total settlement. *Id.* at 944–45.

This Court's endorsement of cross-checking disproportionate lodestar awards in fee-shifting cases is not inconsistent with the goals of fee-shifting statutes. To be sure, this Court has observed that "where the monetary recovery is generally small, requiring direct proportionality for attorney's fees would discourage vigorous enforcement" of fee-shifting statutes. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012). This observation makes perfect sense in the context of the vindication of *individual* claims under fee-shifting statutes, like in *Evon. See id.* at 1020, 1023 (explaining that the plaintiff had accepted an offer of judgment releasing her individual claims, but not class-based claims). However, in the context of large, nationwide class action settlements, a cross-check of the lodestar method is consistent with the goals of fee-shifting statutes, for at least two reasons.

*First*, the goal of fee-shifting statutes is to ensure that counsel "undertaking socially beneficial litigation" will receive "an *adequate* fee"—not a windfall. *In re GMC*, 55 F.3d at 821 (emphasis added); *see also In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (lodestar designed for "cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation"). As a practical matter, the class action mechanism, which aggregates small individual claims into a single large action, regularly vindicates

this goal through the sheer scope of the aggregated liability alone, which ensures that fees based on class recovery can be adequate. *Second*, the class action mechanism introduces its own concerns—absent from individual litigation—of potential misalignment between the interests of the absent class and the self-interest of their counsel. "[C]lass actions are rife with potential conflicts of interest between class counsel and class members…." *Mirfasihi*, 356 F.3d at 785. Because "[t]he fees available under a fee-shifting statute are *part of the plaintiff's recovery*, this Court has endorsed the percentage-of-recovery method in fee-shifting cases as "essentially an equitable substitute for private fee arrangements." *Staton*, 327 F.3d at 968 (emphasis added); *see also Evans v. Jeff D.*, 475 U.S. 717, 731–33 (1986) (in general, statutes bestow fees upon plaintiffs, not attorneys). Thus, where a lodestar fee-shifting award to class counsel would have been an unconscionably high percentage of the constructive common fund if the attorneys had claimed it under a private contingency fee arrangement, it is appropriate for a court safeguarding the interests of an absent class to cross-check the fee against the results achieved. To do otherwise would be to ignore the "lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *In re GMC*, 55 F.3d at 821–22 (*citing* Coffee, *Understanding the Plaintiff's Attorney*, 86 Colum. L. Rev. 669, 691, 717 (1986)). "Giving undue weight to class counsel's lodestar calculation would only encourage work that did not benefit the class." *In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *6 (W.D. Wash.

June 15, 2012) (awarding fees in class action settlement based on underlying Washington consumer protection statute with fee-shifting provision).

**B.    The District Court Failed to Cross-Check an Unreasonable Fee Award**

The district court failed to cross-check its lodestar-based fee award, despite stating its reservations about the disproportion between fees and class recovery. At the fairness hearing, the district court remarked that "the overall amount of the fee requested may seem a little high in comparison to the value of the settlement to the extent the value of the settlement has anything to do with the value of the fees requested." ER 57. Specifically, the court recognized that the value of the class recovery was "of course, less than the amount of attorneys fees and costs being claimed…." ER 56.

However, in its order approving class counsel's requested fee award, the district court avoided making any such comparison—although it "acknowledge[d] that some observers may view this award as being unjustifiably large when compared to the ultimate value of cash and voucher redemptions." ER 31. The district court chose to follow the lodestar method of calculating fees because the suit was based upon statutes with fee-shifting provisions. ER 27–28, 31. It found the requested fee reasonable, citing the quality of representation, the ostensible sufficiency of the available relief in relation to the parties' estimates of individual damages (despite not accounting for the availability of treble damages for the underlying antitrust claim),

the fact that the plaintiffs had successfully appealed an adverse ruling, and the "specter of nonpayment ... in the event they did not recover for the class."[6] ER 31. The district court cited "the unquantifiable future benefits bestowed upon the public at large" in refusing to compare the fee to the class recovery, concluding that "comparison of the Court's fee award with the final value of redemptions is a patently unfair way to compensate class counsel in this case." ER 32. In truth, the district court's approval of fees exceeding the class recovery without such a comparison is an error of law and is patently unfair to the absent class.

As a preliminary matter, the district court erred in putting such weight on intangible or unquantifiable benefits of injunctive relief. The district court received no evidence and made no explicit findings on the value of the injunctive relief,[7] and therefore cannot use it to justify a disproportionate fee award. *Bluetooth*, 654 F.3d at 945 ("Plaintiffs urge us to find that the fee award is justified because the injunctive relief confers a valuable benefit and was the primary objective of the lawsuit, but the

---

[6] To the extent that the "specter of nonpayment" in the event of a loss was a reference to the contingent nature of the representation, and not the potential insolvency of Defendants, including this in the reasonableness analysis was an error of law. *See, e.g., City of Burlington v. Dague*, 505 U.S. 557 (1992) (prohibiting pure contingency enhancements of lodestar under fee-shifting statutes); *Bluetooth*, 654 F.3d at 942 n.7 (noting that "whether the fee is fixed or contingent" is "no longer valid" as a reasonableness factor).

[7] Although the district court speculated that the injunctive relief "potentially prevents future harm" and "potentially results in millions upon millions of dollars in savings for an untold number of future California leisure renters," it did not receive evidence on the potential value of the injunctive relief nor did it estimate a value. ER 32.

district court did not make findings on the value of the injunctive relief, so we cannot evaluate whether it justifies an otherwise disproportionate award."). Additionally, injunctive relief is prospective relief, which is not a benefit to the class members insofar as it does not compensate them for their past injuries. "The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654. Fee-shifting statutes do serve to encourage lawyers to litigate certain kinds of claims that are in the public interest, but under Rule 23(a)(4), private class counsel must still represent an actual class of persons. A fee-shifting statute ensures an adequate fee award; it does *not* allow class counsel to justify a windfall fee exceeding the value of class recovery by acting as *parens patriae* for the public at large. Because injunctive relief is not a benefit to the class, cross-checking the fee award against the total constructive common fund cannot "discount[] the value of the benefit achieved for the class." ER 32.

Most importantly, the district court erred by distinguishing *In re Petroleum Products Antitrust Litigation*, 109 F.3d 602 (9th Cir. 1997), as non-controlling in a footnote. It did so based on the separation of the claims-made class recovery from the fees independently paid by Defendants. "[T]here is no danger here that a large portion of the wealth available to the class—embodied in a common fund—will be diverted to class counsel to the detriment of the class." ER 34. This ignores that settling parties are rational actors negotiating an overall package, and that the relevant diversion of funds may happen at the bargaining table. *Bluetooth*, 654 F.3d at 949 (courts "must take

into account the defendant's overall willingness to pay"); *In re GMC*, 55 F.3d at 820 (severable fee structure "is, for practical purposes, a constructive common fund"); *Johnston*, 83 F.3d at 241 ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). The same concerns about unfair distribution implicated in *Petroleum Products* are implicated here, "regardless of 'whether the attorneys' fees come from a common fund or are otherwise paid.'" *Bluetooth*, 654 F.3d at 949 (quoting *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999)).

The district court should have cross-checked its lodestar-based award of attorneys' fees against class recovery—specifically, by application of the percentage-of-recovery method, re-evaluating the settlement as a constructive common fund in recognition of the fact that settlements are negotiated as a package deal. Such a cross-check is highly encouraged by this Court's opinions in *Petroleum Products* and *Bluetooth*, and should have been mandatory under these facts, where the district court recognized that class recovery would be, "of course, less than the amount of attorneys fees and costs being claimed…." ER 56. A settlement where attorneys' fees total approximately 40% of the total payout might perhaps be merely questionable in an individual contingency fee agreement, but in the class action context—where the attorneys had the duty to represent an absent class—such a disproportionate result is unfair and unreasonable.

## CONCLUSION

Class counsel has a fiduciary responsibility to ensure that they adequately represent their clients—the class. And the district court has an obligation to protect the absent class by determining whether the settlement distribution is fair, adequate, and reasonable. As a matter of law, it cannot be fair, adequate, and reasonable for the class attorneys to receive more value from a nationwide class action settlement than their clients. The district court was wrong to treat the attorneys' fees as separate and sacrosanct based on the underlying statutory fee-shifting provisions. This Court's precedent, and common sense based on the special advantages and problems of the class action mechanism, demand otherwise. This Court should reverse the settlement approval and fee award.

DATED: April 26, 2013

/s/ Paul R. Hansmeier
Paul R. Hansmeier
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South Seventh Street, Suite 212-313
Minneapolis, MN 55402
612-234-5744
*Attorney for Objector–Appellant Gordon Hansmeier*

## STATEMENT OF RELATED CASES
## PURSUANT TO NINTH CIRCUIT RULE 28-2.6

Appeal Nos. 12-57205 and 12-57211 are pending appeals by other objectors that have been consolidated with Hansmeier's lead appeal. Appellant Hansmeier is unaware of any other related cases pending in this Court.

DATED: April 26, 2013

/s/ Paul R. Hansmeier
Paul R. Hansmeier
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South Seventh Street, Suite 212-313
Minneapolis, MN 55402
612-234-5744
*Attorney for Objector–Appellant Gordon Hansmeier*

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. 32(a)(7)(c) AND CIRCUIT RULE 32-1

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,423 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Garamond font.

DATED: April 26, 2013

/s/ Paul R. Hansmeier
Paul R. Hansmeier
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South Seventh Street, Suite 212-313
Minneapolis, MN 55402
612-234-5744
*Attorney for Objector–Appellant Gordon Hansmeier*

## PROOF OF SERVICE

I hereby certify that on April 26, 2013, I authorized the electronic filing of the foregoing with the Clerk of Court of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will send notification of such filing to all participants in the case who are registered CM/ECF users.

I further certify that some of the participants in the case are not registered CM/ECF users, and that I caused the foregoing to be mailed via the United States Postal Service to the following non-CM/ECF participants:

| | |
|---|---|
| Michael L. Weiner<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036 | Scott M. Plamondon<br>Weintraub Genshlea Chediak Law Corp.<br>11th Floor<br>400 Capitol Mall<br>Sacramento, CA 95814 |

DATED: April 26, 2013

/s/ Paul R. Hansmeier
Paul R. Hansmeier
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South Seventh Street, Suite 212-313
Minneapolis, MN 55402
612-234-5744
*Attorney for Objector–Appellant Gordon Hansmeier*