Appeal Nos. 12-57026, 12-57205, 12-57211

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| Appeal No. 12-57026 | Appeal No. 12-57205 |
|---|---|
| MICHAEL SHAMES; et al.,<br>            Plaintiffs – Appellees,<br>v.<br>GORDON HANSMEIER,<br>            Objector – Appellant,<br>v.<br>HERTZ CORPORATION, INC., et al.,<br><br>            Defendants– Appellees. | MICHAEL SHAMES; et al.,<br>            Plaintiffs – Appellees,<br>v.<br>ANDREW CESARE; CERY PERLE;<br>GARY BISHOP; FRANK DEJULIUS,<br>            Objectors - Appellants,<br>v.<br>HERTZ CORPORATION, INC., et al.,<br><br>            Defendants – Appellees. |

Appeal No. 12-57211
MICHAEL SHAMES; et al.,
            Plaintiffs – Appellees,
v.
THOMAS J. LAVERY,
            Objector – Appellant,
v.
HERTZ CORPORATION, INC., et al.,
            Defendants – Appellees.

On Appeal From the United States District Court for the Southern District of California – The

Honorable Michael M. Anello, Case No. 07-CV-2174-MJMA(WMC)

## MOTION TO DISMISS APPEAL OF GORDON HANSMEIER, APPEAL NO. 12-57026

| | |
|---|---|
| Sullivan, Hill, Lewin, Rez & Engel<br>A Professional Law Corporation<br> Donald G. Rez, SBN 82615<br>550 West "C" Street, Suite 1500<br>San Diego, California 92101<br>Telephone:  (619) 233-4100<br>Facsimile:    (619) 231-4372<br>rez@sullivanhill.com<br>*Co-Lead Counsel for Class Plaintiffs-Appellees* | Hulett Harper Stewart LLP<br> Dennis Stewart (99152)<br>225 Broadway, Suite 1350<br>San Diego, CA  92101<br>Telephone:   (619) 338-1133<br>Facsimile:   (619) 338-1139<br>dstewart@hulettharper.com<br>*Co-Lead Counsel for Class Plaintiffs-Appellees* |

353167-v1

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. PROCEDURAL BACKGROUND AND STATEMENT OF FACTS
RELEVANT TO THE MOTION…………………………………….. ..............4

    A.    The District Court's Final Approval Order .................................................4

    B.    Proceedings Before This Court .................................................................6

    C.    Hansmeier and Gibbs' Attempt Below to Extort $30,000
in Exchange for Not Filing the Objections Which are the
Subject of this Appeal ..............................................................................7

    D.    Sanctions Against Paul Hansmeier for Analogous Misconduct
Ordered by the United States District Court for the
Central District of California ...................................................................10

III. LEGAL ARGUMENT .................................................................................12

    A.    Hansmeier Has Filed an Abusive Appeal Which is a
Continuation of his Extortive Conduct Below and the
Court of Appeals Has Broad Discretion to Dismiss It ...........................12

    B.    Hansmeier's Conduct in This Case is Extortive and Retaliatory ...........12

    C.    Hansmeier's Litigation of These Objections is Vexatious
and Abusive ..............................................................................................15

IV. THIS APPEAL SHOULD BE DISMISSED BECAUSE IT IS
BEING PROSECUTED BY AN ATTORNEY WHO IS NOT
ADMITTED TO THE COURT'S BAR ..........................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. President Lines, Inc.*,
  779 F.2d 714 (D.C. Cir. 1985) .................................................................. 12, 17

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ............................................................................12

*Azizian v. Federated Dep't Stores, Inc.*,
  499 F.3d 950 (9th Cir. 2007) ..............................................................12

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-10395, 2006 WL 6916834 (D. Mass. Aug. 22, 2006) ...........16

*Chambers v. Nasco, Inc.*,
  501 U.S. 32 (1991) ..............................................................................19

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ..............................................................19

*Flatley v. Mauro*,
  39 Cal. 4th 299 (2006) ........................................................................14

*Gibson v. Office of Atty. Gen., State of Cal.*,
  561 F.3d 920 (9th Cir. 2009) ..............................................................17

*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) ...................................................... 19, 20

*In re Groupon Marketing & Sales Practices Litig.*,
  Case No. 13-55118 (9th Cir. May 17, 2013) ...................................4, 6

*Ingenuity 13 LLC v. Doe*,
  Case No. 13-55859 (9th Cir. May 20, 2013) ......................................11

*Ingenuity 13 LLC v. Doe,*
  No. 12-cv-8333, 2013 WL 1898633 (S.D. Cal. May 6, 2013) .................. *passim*

*Libarian v. State Bar*,
  38 Cal. 2d 328 (1952) ...................................................................14

*Lyddon v. Geothermal Prop., Inc.*,
  996 F.2d 212 (9th Cir. 1993) .........................................................17

*Mendoza v. Hamzeh*,
  215 Cal. App. 4th 799 (2013) ........................................................14

*In re: Paul Hansmeier, Esq., Application for Admission to the
  Bar of the Ninth Circuit*,
  Case No. 13-80114 (9th Cir. May 15, 2013) ............................... 1, 3, 6

*Roadway Express, Inc., v. Piper*,
  447 U.S. 752 (1980) .......................................................................18

*Shames v. Cal. Travel & Tourism Comm'n*,
  626 F.3d 1070 (9th Cir. 2010) .........................................................5

*Shames v. Hertz Corp.*,
  No. 07-02174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)................... 3, 5, 6, 9

*Shames v. Hertz Corp.*,
  No. 07-2174, 2012 WL 4903680 (S.D. Cal. Oct. 15, 2012)................... 2, 7, 8, 9

*Shames v. Hertz Corp.*,
  No. 07-2174, 2012 WL 5392169 (S.D. Cal. Nov. 5, 2013)................................2

*In re So. Cal. Sunbelt Developers, Inc. v. So. Cal. Sunbelt Developers, Inc.*,
  No. SACV06-00270, 2009 WL 2138490 (C.D. Cal. July 15, 2009).................17

*Thomas v. Computax Corp.*,
  631 F.2d 139 (9th Cir. 1980) .......................................................4, 20

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ................................................... 17, 18

*Vaughn v. Am. Honda Motor Co., Inc.*,
  507 F.3d 295 (5th Cir. 2007) ..........................................................16

*Vollmer v. Publishers Clearing House*,
  248 F.3d 698 (7th Cir. 2001) ..........................................................17

*Vollmer v. Selden*,
  350 F.3d 656 (7th Cir. 2003) ................................................... *passim*

*Zaldivar v. City of Los Angeles*,
780 F.2d 823 (9th Cir. 1986), *overruled on other grounds*, *Cooter & Gell v. Hartmarx*, 496 U.S. 384 (1990) .......................................................................18

## Statutes, Rules & Regulations

Federal Rules of Appellate Proedure
Rule 3(a)(2) .......................................................................................4, 20
Rule 7 ......................................................................................................10
Rule 11(b)(1) ...........................................................................................8
Rule 38 .............................................................................. 3, 16, 17, 18
Rule 46 ...............................................................................................4, 20
Rule 46(b)(1)(B) ...................................................................................20

California Penal Code
§ 518 .......................................................................................................14
§ 519 .......................................................................................................14
§ 523 .......................................................................................................14

American Bar Association Model Rules of Professional Conduct
Rule 1.2(a) ..............................................................................................13
Rule 8.4 ...................................................................................................19
Rule 8.4(b) ..............................................................................................19
Rule 8.4(c) ..............................................................................................19
Rule 8.4(d) ..............................................................................................19
Rule 11 ............................................................................................. 17, 18
Rule 23 ...................................................................................................15
Rule 46-2 ................................................................................................17
Rule 46-2(a) ...........................................................................................20

## Secondary Authorities

Brian T. Fitzpatrick, *The End of Objector Blackmail?* (2009)
62 Vand. L. Rev. 1623 ........................................................................15

Bruce Greenberg, *Keeping the Flies Out of the Ointment:*
*Restricting Objectors to Class Action Settlements* (2010)
84 St. John's L. Rev. 949 ....................................................................15

## I.     <u>INTRODUCTION</u>

Appellee brings this motion to dismiss the above-captioned appeal and to strike the brief filed by Gordon Hansmeier through attorney Paul Hansmeier.  This appeal is being prosecuted by an attorney who is not admitted to the Bar of the Ninth Circuit.  His application for admission is being "held in abeyance" as a result of a "finding of moral turpitude" in connection with his participation in a scheme to abuse the litigation process to procure settlements found by the United States District Court for the Central District of California.  Order, *In re: Paul Hansmeier, Esq., Application for Admission to the Bar of the Ninth Circuit,* Case No. 13-80114 (9th Cir. May 15, 2013) [Ninth Cir. Dkt. No. 3] ("Hansmeier Order Denying Admission") (citing *Ingenuity 13 LLC v. Doe,* No. 12-cv-8333, 2013 WL 1898633 (S.D. Cal. May 6, 2013) ("Ingenuity Sanction Order")).[1]  Aside from Paul Hansmeier's disqualification to act as attorney of record in this Court, this appeal presents a similar scheme of abusing the legal process for profit and should, for that additional reason, be summarily dismissed.  As the district court found in this case, the objections underlying this appeal arise from a "bold and improper" threat made to class counsel by Paul Hansmeier.  In a letter accompanied by draft objections sent to class counsel immediately prior to the objection deadline, Paul Hansmeier, who was not counsel of record for the objector at the time, (but

---

[1]  Attached as Exhibit A to Appellees-Class Plaintiffs' Request for Judicial Notice in Support hereof and filed concurrently herewith ("RJN").

claimed to be "lead counsel"), threatened to file extensive objections to the settlement unless class counsel paid $30,000 prior to the close of the objection deadline, warning that failure to pay would result in the price going higher and admonishing counsel to "Govern yourself accordingly." The district court condemned Hansmeier's conduct, correctly characterizing it as: "[E]ssentially, 'We'll go away in exchange for $30,000; otherwise we'll file lengthy objections.'" *Shames v. Hertz Corp.*, No. 07-2174, 2012 WL 4903680, at *4 n.4 (S.D. Cal. Oct. 15, 2012) [Dist. Ct. Dkt. No. 345], ER 560.

When class counsel refused to pay Hansmeier's extortionate demand for what can fairly be described as "protection money," and suggested that his conduct in demanding it was sanctionable, Hansmeier carried out his threat and caused the objections to be filed through his compatriot, Brett Gibbs, who was counsel of record for the objector at the time.[2] Neither he nor Gibbs (nor objector Gordon Hansmeier) appeared at the Final Approval hearing.[3] At class counsel's urging, the

---

[2] Paul Hansmeier and Brett Gibbs professionally associated in a somewhat notorious legal practice, known as Prenda Law and its predecessors (Steele, Hansmeier). *Ingenuity 13 LLC v. Doe,* No. 12-8333, 2013 WL 1898633, at *3 (C.D. Cal. May 6, 2013). RJN, Ex. B. Paul Hansmeier's relationship with Brett Gibbs and Gibbs' participatory role as a "willing attorney" who engaged in misrepresentations to the court in furtherance of the scheme to coerce extrajudicial settlements found by Judge Wright was described by the district court in *Ingenuity 13 LLC*, discussed in § II.D, *infra*. *See generally* http://www.popehat.com/2013/03/18/prenda-law-brett-gibbs-confronts-a-philosophical-conundrum/.

[3] Appellant Hansmeier filed a very partial "Consolidated Excerpts of Record" on April 26, 2013 [Ninth Cir. Dkt. No. 46-3]. The Order on Final Approval of Class Settlement and Judgment appealed is submitted as ER 1-41 (reported at *Shames v. Hertz Corp.*, No. 07-2174, 2012 WL 5392169 (S.D. Cal. Nov. 5, 2013)) and the

(continued…)

district court nonetheless considered and rejected each of Hansmeier's objections on their merits in a thorough 36-page opinion which praised both the settlement and counsel's work in securing it. ER 1-41. *See Shames v. Hertz Corp.*, No. 07-02174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) [Dist. Ct. Dkt. No. 357] (the Westlaw citation is cited herein as the "Approval Order" for convenience).

This Appeal (now purportedly being prosecuted by Paul Hansmeier as replacement for Brett Gibbs)[4] constitutes a continuation of the extortionate, retaliatory conduct initiated in the district court. Extortion and retaliation, however, are not legitimate litigation methods or objectives. In the face of such abuse, this Court has broad powers to act, and Appellee requests that the Court exercise its inherent power and FRAP Rule 38 authority to dismiss this abusive appeal.

In addition, the appeal should be dismissed because it is not being prosecuted through an attorney admitted to practice before this Court. *See* RJN, Ex. A (Hansmeier Order Denying Admission). Paul Hansmeier's application for admission in this case has not been granted and should not be granted. He has

---

(…continued)

transcript of the fairness hearing is submitted as ER 48-118. District Court Judge Anello identified the appearing objectors at ER 4, lns. 17-18 and their comments are transcribed at ER 97-107, and ER 115-16. The District Court's docket is attached as ER 526-64.

[4] As was his role in *Ingenuity 13 LLC*, Gibbs here was the "willing attorney" utilized by Hansmeier to appear and do his bidding in the district court. *See Ingenuity 13 LLC*, 2013 WL 1898633, at *3 ("The Principals [which included Paul Hansmeier, *id*. at *2] have hired willing attorneys, like Gibbs, to prosecute these cases. Though Gibbs is culpable for his own conduct before the Court, the Principals directed his actions."), RJN, Ex. B.

recently been denied admission in another case pending before this Court (*see In re Groupon Marketing & Sales Practices Litig.*, Case No. 13-55118, (9th Cir. May 17, 2013) [Ninth Cir. Dkt. No. 16], RJN, Ex. C). He was sanctioned and referred for possible criminal prosecution by a district court within this Circuit in a case where he was found to have engaged in abusive litigation conduct analogous to that displayed here. *See Ingenuity 13 LLC v. John Doe*, No. 12-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013), RJN, Ex. B. Since appellant Hansmeier has failed to take the necessary step of procuring counsel admitted to the bar of the Ninth Circuit to prosecute the appeal (and since the appeal is driven by the non-admitted counsel), this Court may appropriately dismiss the appeal. FRAP Rules 3(a)(2), 46; *Thomas v. Computax Corp.,* 631 F.2d 139, 141 (9th Cir. 1980).

## II.   PROCEDURAL BACKGROUND AND STATEMENT OF FACTS RELEVANT TO THE MOTION

### A.   The District Court's Final Approval Order

The Gordon Hansmeier appeal is from the November 5, 2012 Order on Final Approval of Class Action Settlement, Attorneys' Fees, Costs, and Incentive Award; Judgment and Dismissal. The underlying case alleged that certain rental car companies had agreed in violation of the antitrust laws to uniformly add two fees to retail rental car transactions occurring at California airports. Approval

Order, 2012 WL 5392159, at *1.[5]  After extensive litigation,[6] a proposed settlement was reached on behalf of a class comprised of California airport renters during the class period.  Against estimated daily damages averaging, according to Plaintiff about $3.00 per day and according to Defendants about 18 cents per day, the settlement afforded each claiming class member $2.00 per rental day in cash with a $5.00 minimum payment or, if they chose, class members could elect to forego the cash payment in exchange for a voucher good for one or two free day rentals depending upon the number of their qualifying rental days.[7]

The settlement also provided for the separate payment by Defendants of attorneys' fees, litigation costs and all notice and administration costs.  The settlement and the fee and expense agreement were closely scrutinized by the district court under the "heightened scrutiny" line of cases in this Circuit.  *Id.* at *4,

---

[5] This case is the subject of a prior opinion from this Court.  *Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1070 (9th Cir. 2010).

[6] "Here the parties engaged in ***extensive*** formal and informal discovery, including 27 depositions by Plaintiffs alone, ***all*** forms of written discovery, production and review of 737,000 pages of documents, and third party discovery.  The parties participated in a number of meet and confer efforts and discovery conferences with assigned Magistrate Judge.  Experts were hired and consulted for a total of 1,932 hours by Plaintiffs' experts alone.  The parties left no stone unturned, and utilized a multitude of discovery tools, in the discovery phase of this case."  Approval Order, 2012 WL 5392159, at *6 (emphasis in original).

[7] Under the settlement all class members were entitled to cash approximating (or exceeding) two thirds of the high estimate of daily damages and no class member was required to accept a voucher.  Approval Order, 2012 WL 5392159, at *3.  The district court valued the vouchers provided as an alternative to the cash entitlement at between $40 and $100 per day and thus those that chose this option could receive economic value which was many multiples of their cash entitlement.  *Id.* at *3, *7 and nn.6-8.

*17. The district court considered all timely filed objections and issued a thorough 36-page opinion which found that the settlement easily met the approval standard and that there was no evidence of unfairness or collusion. *Id*. at *17. The court thoroughly examined the circumstances under which the agreement on fees had been reached, and the merits of the amounts paid. *Id*. at *17-*21, and *15. In praising counsel's "exceptional" and "superior" work (*id*. at *19) and the excellent result achieved (*id*.) in a case which it described as "contentious, novel and complex" (*id*.), the court went on to note that the separately and subsequently negotiated fee, which was not a condition of the settlement, (*id.* at *13), was lower than the court itself would have awarded. *Id*.[8]

## B.    Proceedings Before This Court

Gordon Hansmeier filed his Notice of Appeal on November 6, 2012. Paul Hansmeier then filed a substitution of counsel (substituting for Brett Gibbs) and filed an opening brief on April 26. [Ninth Cir. Dkt. Nos. 39 and 46]. Although purporting to appear as counsel for the nominal objector, Gordon Hansmeier, Paul Hansmeier is not admitted to this Court's bar. *See* RJN, Ex. A (Hansmeier Order Denying Admission).[9]

---

[8] Because the merits of the district court's analysis are not relevant to the grounds asserted in support of the motion, we only briefly summarize the court's carefully reasoned and thorough opinion.

[9] His admission before this Court in another case was denied. *See In re Groupon Marketing & Sales Practices Litig.*, Case No. 13-55118 (9th Cir. May 17, 2013) [Dkt. No. 16], RJN, Ex. C.

**C.    Hansmeier and Gibbs' Attempt Below to Extort $30,000 in Exchange for Not Filing the Objections Which are the Subject of this Appeal**

The conduct of Paul Hansmeier which is the subject of this motion was described in a separate opinion by the district court.  *See* Order Denying *Ex Parte* Motion for Leave to File Motion to Intervene of October 15, 2012 [Dist. Ct. Dkt. No. 345] (reported at *Shames v. Hertz Corp.*, No. 07-2174, 2012 WL 4903680 (S.D. Cal. Oct. 15, 2012)), RJN, Ex. D.  As recounted in that opinion,[10] on the eve of the last day for filing objections, Paul Hansmeier, purporting to act on behalf of class member Gordon Hansmeier, sent a letter to class counsel demanding the payment of $30,000 dollars in return for not filing objections to the fairness of the settlement and the award of attorneys' fees.  He set the objection filing deadline as the deadline for acceptance of his demand, warning that if not accepted the price would go up and admonishing class counsel to govern themselves accordingly.

As the district court observed, quoting the letter, Paul Hansmeier threatened to file the enclosed objections "if [class counsel did] not attempt to resolve this matter" i.e. by paying the $30,000 demanded.  Specifically the letter stated:

---

[10]  The district court had before it the Declaration of Dennis Stewart in Support of Plaintiff's Consolidated Response to Objections to Settlement and to Application for Approval of Attorneys Fees, Expenses and Service Award to Representative Plaintiff and in Support of its Opposition to *Ex Parte* Motion for Leave to File a Motion to Intervene and supporting exhibits [Dist. Ct. Dkt. Nos. 343-1, 343-2] and the Declaration of Paul Hansmeier, dated October 1, 2012 [Dist. Ct. Dkt. No. 331-1], attached as Ex. A to Objection of Gordon Hansmeier to Proposed Settlement and Attorney's Fee Award and Notice of Intent to Appear at Hearing [Dist. Ct. Dkt. No. 331], in which he identified himself as "lead counsel for Gordon Hansmeier." ER 559-60.

> I will extend to you [i.e. class counsel] an offer to settle this matter with my client for $30,000.00 if the settlement terms are reached by 5:00 PM CST on Monday, Oct. 1, 2012 [the claim filing deadline]. If you reject this settlement and the objection is filed, the offer to settle is revoked and will not be extended at the pre-filing settlement amount.
>
> Govern yourself accordingly.

*Shames*, 2012 WL 4903680, at *1-*2. There was no demand that the settlement be modified or abandoned based on Gordon Hansmeier's supposedly fervently held objections. Had class counsel acceded to the demand, Hansmeier's objections would never have come to the attention of the district court. Hansmeier's demand was for "hush money."

After class counsel replied to that letter informing Paul Hansmeier of their view that his conduct was sanctionable, Gordon Hansmeier, through Gibbs, moved for leave to file a motion to intervene for the purpose of filing a motion for "Removal of Co-Lead Counsel, for Issuance of Supplemental Notice and for Appointment of *Ad Litem* Counsel" [Dist. Ct. Dkt. No. 341-4], ER 560. The request to file that motion was based on Hansmeier's claim that class counsel had acted improperly in responding to Paul Hansmeier's payoff demand by having suggested in response to that letter that threatening to file an objection unless the lawyer was paid off by class counsel was a sanctionable abuse of the judicial process.[11] After finding no merit in the justifications offered in support of objector

---

[11] *See* FRAP Rule 11(b)(1) (stating that "improper purpose" includes intent to harass, cause unnecessary delay or needlessly increase the cost of litigation and justifies sanctions); *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003)
(continued...)

Hansmeier's untimely motion, the court further held that even if it had been inclined to allow the untimely filing, there was no merit in the underlying motion:

> Further, having reviewed the "Underlying Motion," it is apparent that it is without merit and would not succeed even if it were allowed to proceed. . . . In reviewing the letters between Objector's counsel and class counsel the only "bold and improper" conduct the Court can identify is Objector's counsel's attempt to extract $30,000, from class counsel in exchange for Objector not filing objections that Objector's counsel suggested could derail approval of the class settlement and attorneys, fees."

*Shames*, 2012 WL 4903680, at *4.

As the court further observed, the lack of any independently-actionable claims against class counsel combined with the small amount of the "client's" individual claim in the case and the "out of thin air" $30,000 figure demanded, indicated that "the only 'matter' [objector's] counsel could wish to 'settle' for $30,000, is the arguably inappropriate *quid pro quo* – essentially 'We'll go away in exchange for $30,000; otherwise we'll file lengthy objections' – Objector's counsel demanded." *Id.* at *4 n.4 (citing *Vollmer v. Selden*, 350 F.3d 656, 659-60 (7th Cir. 2003)).[12]

No one appeared at the Final Approval hearing on behalf of objector Gordon Hansmeier. ER 4 (Approval Order, 2012 WL 5392159, at *2), ER 97, ER 115. Gordon Hansmeier, the nominal objector, neither submitted any declaration in support of the objection [Dist. Ct. Dkt. No. 331], ER 559, nor did he file a claim.

---

(…continued)
(intervention in a class action for purpose of delaying case and securing a payment to go away would justify sanctions).

[12]   The district court further found that "[a] recipient of such a letter could reasonably interpret it as a threat to file lengthy objections *in retaliation for* not acquiescing to the $30,000 demand." *Id.* at *4 n.4 (emphasis in original).

Declaration of Stefanie Gardella Re: FRAP Rule 7 Motion, ¶ 3 [Dist. Ct. Dkt. No. 383-3], RJN, Ex. E.

### D. Sanctions Against Paul Hansmeier for Analogous Misconduct Ordered by the United States District Court for the Central District of California

Very recent proceedings before the United States District Court for the Central District of California persuade that Paul Hansmeier's conduct in this case is part of a broader pattern of abuse of the federal court system to extort settlements. *Ingenuity 13*, 2013 WL 1898633 (RJN, Ex. B).

In that case, after extended proceedings which included an Order to Show Cause at which Paul Hansmeier and others involved invoked their Fifth Amendment privilege against testifying, *id.* at *2 and n.3, Judge Wright found that an "enterprise" resembling a "RICO enterprise" (*id.* at *5) ("only enterprise they resemble is RICO"), which included Gordon Hansmeier's former counsel of record in this case, Brett Gibbs, and his current counsel, Paul Hansmeier, engaged in a fraudulent scheme centered on the filing and prosecution of "vexatious litigation designed to coerce settlement." *Id.* at *2 (Finding of Fact 5). This conduct, according to Judge Wright's findings, included a "willingness to deceive not just this Court, but other courts where they have appeared" and involved "representations about their operations, relationships, and financial interests [which] have varied from feigned ignorance to misstatements to outright lies." *Id.* at *3 (Finding of Fact 11). Judge Wright imposed a significant monetary sanction and indicated the court's intention to refer Hansmeier's, Gibbs' (and the others') conduct to their respective state and federal bars

(including the Standing Committee on Discipline for the Central District of California), the Criminal Investigative Division of the Internal Revenue Service, the United States Attorney's Office for the Central District of California, as well as all other courts before whom the attorneys have pending cases. *Id.* at *5.[13]   The similarities in purpose, method and actors between the conduct which is the subject of Judge Wright's sanctions Order and the events and conclusions reached by Judge Anello in his Order Denying *Ex Parte* Motion for Leave to File Motion to Intervene in this case are evident.  RJN, Ex. D.  They both involve Paul Hansmeier and Brett Gibbs and both involve using threats of legal proceedings to secure payments to "go away."[14]  If anything, their conduct in this case may be more egregious.  At least in the copyright infringement cases which were the subject of Judge Wright's Order, the coercive settlement demands are ostensibly based on a colorable legal claim held by an alleged copyright holder against an alleged infringer.  Here, the extortive payment sought by Paul Hansmeier from class counsel in exchange for not asserting objections on behalf of the Class had no basis in any claim Paul Hansmeier or his objector client, Gordon Hansmeier, had against class counsel or the class for that matter.  Theirs was

---

[13]  On May 20, 2013, this Circuit denied Paul Hansmeier's emergency motion for stay of Judge Wright's sanctions order. *Ingenuity 13 LLC v. Doe*, Case No. 13-55859 (9th Cir. May 20, 2013) [Dkt. No. 6], RJN, Ex. F.

[14]    According to Judge Wright, Hansmeier and Gibbs and others used the "paralyzing social stigma" of being accused of illegally downloading a pornographic video and the high cost of defending a copyright infringement claim to extract extrajudicial settlements. And "[f]or defendants that refused to settle . . . engaged in vexatious litigation designed to coerce settlement." *Ingenuity 13*, 2013 WL 1898633, at *1 and *2 (Finding of Fact 5), RJN, Ex. B.

simply a naked threat to abuse the class member objection process for a purpose which is clearly not intended, i.e., as a lever for extorting a cash payment to the objector and/or his attorney in exchange for "going away" and not filing objections.

### III.   LEGAL ARGUMENT

#### A.   Hansmeier Has Filed an Abusive Appeal Which is a Continuation of his Extortive Conduct Below and the Court of Appeals Has Broad Discretion to Dismiss It

As the Supreme Court has observed, "there are ways of minimizing the impact of abusive appeals." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009).

> Appellate courts can streamline the disposition of meritless claims and even authorize the district court's retention of jurisdiction when an appeal is certified as frivolous. And, of course, those inclined to file dilatory appeals must be given pause by courts' authority to "award just damages and single or double costs to the appellee' whenever an appeal is 'frivolous.'"

*Id.* (citing FRAP 38 and internal citation omitted).

This Circuit has also observed that the Courts of Appeals have broad discretion in how to deal with abusive appeals, and this discretion includes "dispos[ing] of the appeal at the outset through a screening process, [and] grant[ing] an appellee's motion to dismiss . . . ." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007). Dismissal is a remedy "available at the outset of the appeal." *In re Am. President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir. 1985) (addressing objector appeal from final approval of settlement of antitrust claims brought on behalf of class of consumers).

#### B.   Hansmeier's Conduct in This Case is Extortive and Retaliatory

The district court's observations about the context in which Hansmeier

demanded money are telling. *See* § II.C., *supra*. Neither attorney Hansmeier, nor client Hansmeier, had, nor purported to have, any legal claim against class counsel. Nonetheless, claiming that their objections would stand in the way of settlement and fee approval, they threatened to file objections unless the $30,000 demanded was paid by 5:00 p.m. on the date of the objection submission deadline. As Judge Anello found, the demand amount "came out of thin air" and had no relationship to the value of any possible claim Hansmeier's client could have had against the Defendants, no less against class counsel. These facts, appellee submits, place Paul Hansmeier's conduct (and Gordon Hansmeier's, presuming, as the ethics Rules would imply, the demand was authorized by him)[15] very close to, if not squarely within, the realm of accepted definitions of criminal and civil extortion.

"Extortion is the act or practice of obtaining something or compelling some action by illegal means, as by force or coercion." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) (citing *Black's Law Dictionary* (7th ed. 1999)). "In the context of intervening in a class action settlement, extortion would mean intervening not to increase the value of the settlement, but in order to get paid to go away." *Id.*[16]

---

[15]  *See* American Bar Association's Model Rules of Professional Conduct, Rule 1.2(a) and Comment 1 ("The decisions specified in paragraph (a), such as whether to settle a civil matter, must also be made by the client."); Minnesota Rules of Professional Conduct, Rule 1.2(a) and Comment 1 (same).

[16]  Similarly, the California Penal Code defines extortion as "the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . ." Cal. Pen. Code § 518. Fear, for purposes of extortion "may be induced by a threat . . . [t]o do an unlawful injury to the person or property of the individual threatened or of a third person . . . ." Cal. Pen. Code § 519. "Every person who, (continued...)

"[A] threat that constitutes criminal extortion is not cleansed of its illegality merely because it is laundered by transmission through the offices of an attorney." *Flatley v. Mauro*, 39 Cal. 4th 299, 328 (2006).  "That the threats [are] half-couched in legalese does not disguise their essential character as extortion."  *Id*. at 330 (citing *Libarian v. State Bar*, 38 Cal. 2d 328, 329-30 (1952) (upholding disciplinary action against *Libarian* who, after losing at trial, sent letter to opposing counsel, accusing his opponent's client of perjury and threatening to use the perjury charge as the basis of a new trial motion and a criminal complaint unless opposing counsel's client paid Libarian's client)).[17]  *See also Mendoza v. Hamzeh*, 215 Cal. App. 4th 799, 836 (2013) (finding *quid pro quo* threats in attorney's "demand letter" constituted "criminal extortion as a matter of law").  Where the mechanism employed to effect the extortion is the abuse of the litigation process, the courts have a particular need to address, expose, and rectify the matter.

---

(…continued)
with intent to extort any money or other property from another, sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat."  Cal. Pen. Code § 523.

[17]  The *Libarian* court observed, "[a]lthough no action was taken either by Libarian or Siegel to prosecute Nadel, the record clearly shows conduct which is in violation of Libarian's oath and duties as an attorney.  The threats contained in the letter indicate an attempt to commit extortion.  The sending of a threatening letter with intent to extort money is 'punishable in the same manner as if such money . . . were actually obtained' and the crime of extortion involves moral turpitude." *Libarian v. State Bar*, 38 Cal. 2d 328, 329-30 (1952) (citation omitted).

**C.    Hansmeier's Litigation of These Objections is Vexatious and Abusive**

One cannot imagine a definition of "vexatious" or "abusive" litigation practices that would not include Hansmeier's conduct.   The objection process should constructively serve the Rule 23 approval process.   At the same time, courts and commentators have widely recognized that objections to class action settlements often constitute a type of blackmail.   *See, e.g.*, Brian T. Fitzpatrick, *The End of Objector Blackmail?* 62 Vand. L. Rev. 1623 (2009) (recognizing the disturbing trend whereby class members file frivolous objections and appeals for no other reason than to induce a payment from class counsel and observing that courts and commentators often refer to this practice as objector "blackmail");[18] Bruce Greenberg, *Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements*, 84 St. John's L. Rev. 949 at 1 (2010) (recognizing the "reality" that objectors and their counsel see an opportunity to extract money from the parties or class counsel by threatening to "upset or seriously detour the settlement" unless class counsel agrees to "buy off" the objector or the objector's counsel); *Vaughn v. Am. Honda Motor Co., Inc.*, 507 F.3d 295, 300 (5th Cir. 2007) (observing that "[i]n some circumstances objectors may use

---

[18]  Fitzpatrick notes, "Many courts and commentators believe objector blackmail is a serious problem.  District court judges routinely complain of objectors 'who seek out class actions to simply extract a fee by lodging generic, unhelpful protests' and who 'maraud proposed settlements – not to assess their merits – but in order to extort the parties . . . into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process.' Courts of Appeals likewise warn that 'objectors may use an appeal as a means of leveraging compensation for themselves or their counsel' and refer to objector appeals as 'extortive legal proceedings.'" *Id.* at 1636 (citations omitted).

an appeal as a means of leveraging compensation for themselves or their counsel");

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) (noting that "professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors" and "[r]epeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements");

*Vollmer*, 350 F.3d at 660 (noting that objectors may "intervene and cause expensive delay in the hope of getting paid to go away" and finding such conduct constitutes an improper purpose that justifies sanctions).

While it may not always be easy to distinguish between legitimate objectors and lawyer driven objections designed only to create and delay proceedings to secure a cash payoff (*see Manual for Complex Litigation* (Fourth) § 21.643 (2004), noting problem of objections being prosecuted for improper purposes) Hansmeier's conduct here is not even a close case. Soliciting no changes to the settlement but rather an exorbitant sum of money from class counsel in exchange for assuring that objections do not see the light of day in the district court is clearly beyond the pale. It is a plain abuse of the objection process for the personal enrichment of the objector (and more likely his lawyer) and serves neither the Court nor the class.

To combat an appellant's abusive tactics, FRAP Rule 38 "authorizes an assessment of damages and single or double costs, including reasonable attorneys' fees, '[i]f [the] court of appeals shall determine that [the] appeal is frivolous.'" *Am.*

16

*President Lines*, 779 F.2d at 717 (internal citations omitted). While the cases generally define a "frivolous" appeal as "when the 'result is obvious or the . . . arguments of error are wholly without merit'" (*see Gibson v. Office of Atty. Gen., State of Cal.*, 561 F.3d 920, 929 (9th Cir. 2009)), the Court's powers also reach appeals that are abusive and vexatious.[19] This Circuit has held that "the principles governing the interpretation of Rule 11 should control in interpreting Rule 38." *Lyddon v. Geothermal Prop., Inc.*, 996 F.2d 212, 214 (9th Cir. 1993). *See also In re So. Cal. Sunbelt Developers, Inc. v. So. Cal. Sunbelt Developers, Inc.*, No. SACV06-00270, 2009 WL 2138490, at *1 (C.D. Cal. July 15, 2009) ("the Ninth Circuit has analogized sanctions under Rule 38 to those under [Rule] 11").

Rule 11 requires that "every pleading, motion, or other paper" not only be well grounded in fact, but also not interposed for any "improper purpose." Fed. R. Civ. P. 11. Rule 11 further provides that if an attorney presents a motion to a court for "'any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,'" monetary sanctions may be imposed. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 709 (7th Cir. 2001) (citing Fed. R. Civ. P. 11(b)(1) and (c)). Rule 11's "central purpose" is "deterring abusive litigation tactics" (*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990)) and addresses not just the problem of "frivolous" filings, but also "the problem of misusing judicial procedures as a weapon for personal or economic

---

[19] *See also* Circuit Rule 46-2 and Circuit Advisory Committee Note to Rule 46-2.

harassment." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *overruled on other grounds*, *Cooter & Gell v. Hartmarx*, 496 U.S. 384 (1990).

This Circuit has characterized the improper purpose clause of Rule 11 as "comprehensive" (*Zaldivar*, 780 F.2d at 831) and held that the standard governing the "improper purpose" inquiry is an objective one. *Townsend*, 929 F.2d at 1362. As such, a finding of subjective bad faith by an attorney is not necessary to imposition of sanctions under Rule 11. Rather, knowledge is tested by a "reasonableness under the circumstances" standard. *Zaldivar,* 780 F.2d at 829. Paul Hansmeier's improper purpose is clear from the record and indeed was acknowledged by the district court.[20]

Beyond the authority granted under FRAP Rule 38, federal courts also possess the "inherent power" to discipline attorney misconduct. *Zaldivar*, 780 F.2d at 830. *See also Roadway Express, Inc., v. Piper*, 447 U.S. 752, 764 (1980) (noting courts' inherent authority to assess attorneys' fees after counsel engages in bad faith litigation conduct by willfully abusing judicial process). *See also Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-50 (1991) ("[f]ederal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them").

---

[20] Furthermore, in fashioning Rule 11 sanctions, a court is also permitted to consider a party's past misconduct. *Vollmer*, 350 F.3d at 710 (citing Fed. R. Civ. P. 11, Advisory Committee's Notes). As set forth above in § II.D., *supra*, another court has recently called out Hansmeier's abuse of the judicial system to extract payoffs from purported copyright violators. *See, e.g., Ingenuity 13,* 2013 WL 1898633, at *5 (RJN, Ex. B).

18

"For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of [sanctions].'"

*Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

Paul Hansmeier's conduct also violates the American Bar Association's Model Rules of Professional Conduct.[21]    Model Rule 8.4 states that it is "professional misconduct" for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects" (Rule 8.4(b)); or to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" (Rule 8.4(c)); or to "engage in conduct that is prejudicial to the administration of justice" (Rule 8.4(d)).

## IV.    THIS APPEAL SHOULD BE DISMISSED BECAUSE IT IS BEING PROSECUTED BY AN ATTORNEY WHO IS NOT ADMITTED TO THE COURT'S BAR

Paul Hansmeier, the sole counsel of record for objector Gordon Hansmeier, is not admitted before this Court. His eligibility for admission to practice before the Ninth Circuit is questionable, and is in abeyance.  Judge Wright's and Judge Anello's findings clearly equate to "conduct unbecoming a member of the court's bar."  FRAP Rule 46(b)(1)(B). "Conduct unbecoming a member of the court's bar" means "'conduct contrary to professional standards that shows an unfitness to

---

[21] The court may consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession.  *In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010) (citing *In re Snyder*, 472 U.S. 634, 645 n.7 (1985)).

discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice.'" *In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010) (citing *In re Snyder*, 472 U.S. 634, 645 (1985)).[22]

The failure of this appeal to be prosecuted by an attorney in good standing before this Court constitutes independent ground for dismissal of the Appeal. *See* FRAP Rule 3(a)(2) ("appellant's failure to take any step . . . is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal"); *Thomas v. Computax Corp.,* 631 F.2d 139, 141 (9th Cir. 1980). This appeal is not being prosecuted in conformance with FRAP Rule 46. Dismissal of the appeal is appropriate.

Respectfully submitted,

Dated:   May 30, 2013           SULLIVAN, HILL, LEWIN, REZ & ENGEL

By:    */s/ Donald G. Rez*
Donald G. Rez
Co-Lead Counsel for Plaintiff Class

Dated:   May 30, 2013           HULETT HARPER STEWART LLP

By:    */s/ Dennis Stewart*
Dennis Stewart
Co-Lead Counsel for Plaintiff Class

---

[22]   Circuit Rule 46-2(a) permits this Court to "impose discipline on any attorney practicing before this Court who engages in conduct violating applicable rules of professional conduct, or who fails to comply with rules or orders of this Court. The discipline may consist of disbarment, suspension, reprimand, counseling, education, a monetary penalty, restitution, or any other action that the Court deems appropriate and just."